IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01690-PAB-MEH

GEORGE W. WALKER,

    Plaintiff,

v.

UNIVERSITY OF COLORADO BOARD OF REGENTS,

    Defendant.

---

**RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant's Motion for Summary Judgment [filed May 6, 2010; docket #74]. The matter is referred to this Court for recommendation. (Docket #75.) The motion is fully briefed and oral argument would not materially assist the Court in its adjudication. For the reasons stated below, the Court respectfully RECOMMENDS Defendants' Motion for Summary Judgment be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

Plaintiff, George Walker, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, and to 42 U.S.C. § 1983, asserting violations of his Fourteenth Amendment rights. Plaintiff, proceeding *pro se*, initiated this suit on July 16, 2009. (Docket #2.) Defendant moved to dismiss Plaintiff's claims (docket #38), and the District Court granted that motion in part and denied it in part. (Docket #103.) The District Court allowed Plaintiff's Title VII discrimination and Equal Protection claims to proceed. (*See id.*)

In essence, Plaintiff alleges Defendant Board of Regents discriminated against him, based upon his race and color, by failing to appoint him President of the University of Colorado in 2008.[2] Plaintiff asserts that he "is a man of Anglo, Black, Jewish and Native American Indian ancestry who has tried to implement *Grutter v. Bollinger*, and other diversity based civil rights laws for many years." (Docket #4 at 3.)

Defendant filed the present Motion for Summary Judgment, arguing that no issues of material fact exist, and that Plaintiff's evidence does not establish that he properly applied for the presidency of the University of Colorado, that he was qualified for that position, nor especially that he was more qualified than Bruce Benson, who was appointed President in 2008. (Docket #74.)

Plaintiff responds, as he has previously, only by saying that he was "ruled as qualified to be appointed President of CU by Mr. y Marquez, the Director of the Colorado Civil Rights Division, and by the Hon. Richard Matsch, U.S. District Court Judge." (Docket #96 at 2.)

---

[2]The Plaintiff has brought similar allegations against Defendant in this Court in 1992 (*Walker v. Univ. of Co. Board of Regents*, Case No. 92-cv-00372-RPM) (summary judgment granted in favor of Defendant), 1997 (*Walker v. Univ. of Co. Board of Regents*, Case No. 97-cv-01119-ZLW) (dismissed for failure to prosecute), 2006 (*Walker v. Univ. of Co. Board of Regents*, Case No. 06-cv-02236-LTB-CBS) (dismissed for failure to prosecute), and 2007 (*Walker v. Univ. of Co. Board of Regents*, Case No. 07-cv-02628-LTB-MEH) (administratively closed).

**STATEMENT OF FACTS**

In its Motion for Summary Judgment, Defendant offers the following recitation of undisputed material facts:

In the Spring of 2007, the University of Colorado—by means of a search committee chaired by Mr. Bosley (a member of the Board of Regents)—began a search for a new president. (Docket #74 at 2.) The search committee was aided by a search firm, Storbeck, Pimentel and Associates. (*Id.*) The following documents were publicly posted: a job description for the president; a list of desired qualifications; a letter soliciting nominations; and a position advertisement. (*Id.*) The list of qualifications stated that the candidates should have "serv[ed] as a senior executive and leader of a large and complex educational, business, public or governmental organization"; should have "the professional background, career maturity, educational experience and well-rounded perspective appropriate" for the position, with perhaps a "terminal degree"; and

> a history of experience that demonstrates visionary leadership proficiencies in:
> 
> 1. Fundraising, from prospecting to closing;
> 2. Initiating and completing significant institutional advancement projects;
> 3. Leading innovation;
> 4. Optimizing fiscal and operational opportunities; and
> 5. Working with leaders from within the political and legislative processes.

(*Id.* at 4; docket #74-4 at 2.) The position advertisement likewise states that "[c]andidates should have an extensive, demonstrated record of accomplishment at a senior level in education, business, public, and/or government service," and instructs that "[a]pplications should include a curriculum vitae and a letter of interest." (Docket #74-6 at 2.)

Plaintiff submitted certain documents to the search firm during the application time period. (Docket #74 at 5.) The search firm forwarded all submitted materials to the search committee, whereupon the search committee interviewed several candidates, including Bruce Benson. (Docket #74 at 5, 7.) The search committee did not pursue an interview with Plaintiff, nor did they consider him as a viable candidate for president. (Docket #74 at 6.) Instead, Mr. Benson was offered the presidency, and he accepted it. (Docket #74 at 7.)

In his responses, Plaintiff did not indicate any disagreement with these facts. (*See* docket #96.) Therefore this Court will accept them as undisputed.

## **LEGAL STANDARDS**

### I.   **Treatment of *Pro Se* Pleadings**

As Plaintiff proceeds in this action *pro se*, the Court must construe his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit has interpreted this rule to mean that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998)).

## II.     Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998)

(quoting *Celotex*, 477 U.S. at 324). The Court must view the record and draw "all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

### III.     Title VII/Equal Protection Discrimination

Where, as here, the Plaintiff alleges the same disparate treatment under both Title VII and the Equal Protection Clause, the analytical framework of the Plaintiff's claims are the same whether brought under Section 1983 or Title VII. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007).

"A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Plaintiff nowhere provides direct evidence of discrimination; thus, this Court will apply the test outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), which establishes a method of establishing a *prima facie* case of discrimination via indirect evidence. *See id.*; *Orr v. City of Albuquerque*, 531 F.3d 1210, 1214 (10th Cir. 2008).

Under the *McDonnell Douglas* framework, the initial burden is on a plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The elements necessary to demonstrate a *prima facie* case of discriminatory failure to hire based on race are: (1) the plaintiff belongs to a protected class, (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) despite being qualified, the plaintiff was rejected, and (4) after the plaintiff's rejection, the position remained open and the employer continued to seek applicants

6

from persons of the plaintiff's qualifications. *Id.*; *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982-83 (10th Cir. 2008).

"[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation omitted). Therefore if Plaintiff succeeds in his *prima facie* showing, the burden would then shift to Defendant to provide a legitimate, non-discriminatory reason for its failure to hire Plaintiff. *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1134-35 (10th Cir. 2004). If Defendant does so, the burden shifts once more to Plaintiff to prove Defendant's proffered reason merely a sham or pretext. *Id.* at 1135. If the claimed non-discriminatory reason for failing to hire Plaintiff is that the person actually hired had superior qualifications to Plaintiff, then Plaintiff must prove that he was clearly the more qualified by providing "facts showing an overwhelming disparity in qualifications." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). "Under *McDonnell Douglas*, our role isn't to ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'" *Id.* (quoting *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)) (alterations in original).

## DISCUSSION

### I. Plaintiff's Prima Facie Showing

There is no dispute that Plaintiff belongs to a protected class, that Defendant was seeking applications, and that Plaintiff was rejected in favor of a Caucasian candidate.

The present analysis must center, therefore, on the second prong of the *McDonnell Douglas* test: whether Plaintiff applied and was qualified for the position. Despite Defendant's invitation to parse the words "apply" and "curriculum vitae" (docket #74 at 9-10), the crux of this matter is whether, viewed in the most favorable light, Plaintiff's evidence could prove him to be qualified; and because this Court finds it does not, further philological investigations are unnecessary.

To survive summary judgment in this case, the Plaintiff must bring forth evidence that he was qualified for the position of University President in 2008. The first issue to resolve is identifying what materials Plaintiff actually submitted to the search firm in support of his application.

Plaintiff asserts that he "sent 10 Pages of documents, as part of his résumé, to CU's Presidential Search Firm, filed several documents directly to the CU Bd. Of Regents, published two newspaper letters, clearly, stating that he had applied for the Prez of CU, talked to CU's Bd. Of Regents three times as an applicant, and talked directly to CU's Presidential Search Comm., on 12-5-'08 as an applicant." (Docket #4 at 15.) Defendant's brief purports to attach Plaintiff's submitted materials as Exhibits K and L, but it contains only *six* pages of submissions. (Docket #74-11 at 2-3; docket #74-12 at 2-5.) Acknowledging his *pro se* status, the Court will take Plaintiff's assertion to mean that Plaintiff gave the search committee more documents than Defendant attaches and, further, although Plaintiff fails to specify exactly what documents he submitted, this Court will assume the Plaintiff asserts that all of the documents he has supplied to the Court were also supplied to Defendant. Therefore, this Court will consider whether all of Plaintiff's submissions in this case, taken together, raise an issue of material fact as to whether he was qualified for the Presidency of the University of Colorado.

Even viewed in the light most favorable to the Plaintiff, the Court finds that he fails to demonstrate a genuine issue as to whether he was qualified for the office of University President. The necessary qualifications are defined in the documents released by the search committee, outlined above. (Docket #74 at 4; docket #74-4 at 2.) To summarize: along with having been a senior executive in an organization, the search committee sought candidates who had experience in 1) fundraising, 2) institutional advancement projects, 3) innovation, 4) fiscal matters, and 5) working with political leaders. (*Id.*) Such is the measure against which Plaintiff's submissions must be assessed.

Plaintiff's submissions, after a careful sifting, contain some material relevant to his qualifications. In particular, they contain assertions about Plaintiff's "test scores" (Docket #2 at 2 (alleging that Plaintiff was "denied admission into CU's Medical School because his test scores were to [sic] high"); *see also* docket #2 at 6; docket #52 at 5-6); his education (docket #4 at 13 (alleging that Plaintiff has "a graduate degree, medical school, plus doctorate studies")); docket #52 at 4 (alleging that Plaintiff has degrees in the social sciences); docket #2 at 6 (alleging that Plaintiff was "accepted into the U of Minnesota School of Medicine"); docket #4 at 10 (alleging that Plaintiff "has a broader academic background, superior MCAT's & GRE's, more earned degrees, teaching experience, and a more varied work record than does Bruce Benson")); and his views on various social and educational political policies (*see* docket #4 at 10; docket #52 at 9-10, 18, 20, 23), for which Plaintiff appears to accord special importance (*see, e.g.*, docket #4 at 14 ("My total résumé lets the employer know where I stand on many academic, funding, true diversity, legislative, and privatization issues.")).

9

However, in Plaintiff's view, the keystones of his submissions are two instances where he was "ruled as qualified to be appointed President of CU." (Docket #96 at 2; *see also* docket #2 at 2, 5; docket # 4 at 10, 13; docket #52 at 3-4, 15-16.)

First, Plaintiff provides a document in which Jack Lang y Marquez, Director of the Colorado Civil Rights Division ("CCRD"), found in 1990 that the Plaintiff had

> submitted information which shows that he has experience in each of the categories listed in the job announcement: academic and administrative achievement, and understanding and appreciation of the mission of a multicampus public university, success in promoting and supporting diverse populations, and demonstrated ability to communicate effectively with external and internal constituencies. . . . The [Plaintiff] submitted information during the investigation which shows that he is at least minimally qualified for the position per the criteria as indicated in the job announcement.

(Docket 52, at 15-16.)

Two main objections undermine the sufficiency of Mr. Lang y Marquez' statement as evidence. First, it is not evidence of Plaintiff's actual qualifications; the document provides none of the underlying information upon which the Director made his finding. Second, the CCRD Director outlines what presumably must have been the search criteria from 1990; those criteria are manifestly different from the search criteria used by Defendant's search committee in 2008. Nowhere does the CCRD Director state that Plaintiff was a senior executive of an organization, nor that he had experience in fundraising, institutional projects, innovation, fiscal matters, or working with political leaders (key components of the current search criteria). Therefore, the document provides no evidence that Plaintiff was "minimally qualified" according to those *currently* applicable requirements.

Plaintiff also asserts that he was "ruled as qualified to be appointed President of CU by . . . the Hon. Richard Matsch." (Docket #96 at 2.) By way of proof, Plaintiff offers two excerpts (docket #52 at 4) from what he alleges is a decision by Judge Matsch from March 30, 1994.

> There is some doubt about whether Mr. Walker met these qualifications. In fact, that is because there must necessarily be strong subjective elements to the selection of a chief executive officer.
> ...
>
> The many exhibits and other papers filed by Mr. Walker in this litigation demonstrate his dedication and commitment to establishing an open university environment responsive to an increasingly diversified multiracial and multicultural society. His efforts have spanned many years. He has written to public officials, achieved publication of his views in newspapers, campaigned on campus and addressed the CU Board of Regents at many official meetings. These lawsuits appear to be motivated less by personal gain or aggrandizement than by the plaintiff's passion in the pursuit of social and economic justice for all.

(*See* docket #4 at 13.) These quotations, while couched in a reasonably complimentary tone, require a significant amount of interpretive license before they can be read to imply that Judge Matsch determined Plaintiff to be qualified as University President; Plaintiff appears to recognize as much when he writes "Plaintiff thinks [the judge] meant that . . ." and "[i]f Judge Matsch did not think that Plaintiff Walker was qualified why did he write, one paragraph later . . . ." (Docket #52 at 4.) In any event, the Judge's supposed endorsement from 1994 is subject to the same problems as the CCRD Director's endorsement, discussed above. Even read expansively, Judge Matsch's decision provides no information as to Plaintiff's qualifications in 2008, much less whether they satisfy the current search criteria.

None of Plaintiff's submissions show that he has ever been a senior executive of any organization, nor that he has any experience in the five categories detailed by the search documents. Therefore, this Court must conclude that Plaintiff has raised no genuine issue of material fact as to

11

his application and qualifications; the Plaintiff has offered insufficient evidence to the search committee and to this Court to show that he possessed the minimal qualifications for the position of President of the University of Colorado in 2008. Consequently, this Court recommends finding that Plaintiff has failed to demonstrate a *prima facie* case and that no presumption of discrimination arises. However, in the interests of efficiency and thoroughness, this Court will continue applying the remainder of the *McDonnell Douglas* burden-shifting analysis to determine whether Defendant is entitled to summary judgment.

## II.    Defendant's Valid Motive

If Plaintiff had, in fact, established his *prima facie* case, then Defendant would be required to show a valid motive for the presumptively discriminatory rejection of the Plaintiff. *Exum*, 389 F.3d at 1134-35. Here, Defendant does so, arguing that Mr. Benson, the candidate chosen by the search committee, had qualifications superior to Plaintiff's. (Docket #74 at 12.) As evidence thereof, Defendant provides Mr. Benson's curriculum vitae, which shows that Mr. Benson has been the owner, president, chief executive officer, as well as board member and chairman, of multiple business organizations. (Docket #74-13 at 2.) Additionally, the document reflects that Mr. Benson has been thoroughly involved with many other organizations, including educational institutions and political campaigns, which appears to include experience broadly covering the different elements of the search criteria. (*See id.* at 2-6.) This Court recommends concluding that Defendant has carried its burden of providing a legitimate, non-discriminatory reason for its rejection of Plaintiff and, thus, that any inference of discrimination, had Plaintiff established one, would have been defeated.

12

### III. Plaintiff's Rebuttal of Defendant's Motive

To rebut a claim of superior qualifications, Plaintiff must provide "facts showing an overwhelming disparity in qualifications." *Johnson*, 594 F.3d at 1211-12. Plaintiff alleges his own educational superiority to Mr. Benson. (Docket #4 at 10.) He also asks this Court to "compare[] what the 14 Colorado Legislators said about Bruce Benson, with what CCRD and the Hon. Judge Richard Matsch said about Plaintiff Walker" (docket #52 at 7) and to that end, Plaintiff provides a letter of concern from certain members of the legislature about Mr. Benson's qualifications. (Docket #4 at 7-9.) Be that as it may, the Plaintiff has simply failed to provide sufficient evidence of his *own* superior qualifications in the areas outlined by the search committee to establish any issue of material fact. Therefore, even had Plaintiff established his *prima facie* case, this Court would be compelled to recommend that the District Court conclude the Plaintiff has not proven Defendant's proffered explanation to be pretext.

### CONCLUSION

The Plaintiff fails to establish a *prima facie* case of discrimination; even had he succeeded, Plaintiff has failed to rebut Defendant's proffered legitimate reason for hiring Mr. Benson as the President of the University of Colorado in 2008. Accordingly, for the reasons stated above and based upon the entire record herein, the Court respectfully RECOMMENDS that Defendants' Motion for Summary Judgment [filed May 6, 2010; docket #74] be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

Dated at Denver, Colorado, this 27th day of September, 2010.

                BY THE COURT:

                */s/ Michael E. Hegarty*

                Michael E. Hegarty
                United States Magistrate Judge